FILED

12 SEP 20 AM 11:54

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: MP     DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

June 2011 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. __12CR1848-JAH__ |
| Plaintiff, ) | I N D I C T M E N T |
| ) | **(Superseding)** |
| v. ) | |
| ) | Title 18, U.S.C., Sec. 371 - |
| MARY ARMSTRONG (1), ) | Conspiracy to Commit Wire Fraud |
| aka Mary Fountain, ) | and Money Laundering; |
| aka Mary Daniels, ) | Title 18, U.S.C., Sec. 1343 - |
| aka Mary Polanco, ) | Wire Fraud; Title 18, U.S.C., |
| aka Mary Medina, ) | Sec. 1956(a)(1)(B)(i) - Money |
| WILLIAM FOUNTAIN (3), ) | Laundering; Title 18, U.S.C., |
| aka William Fleming, ) | Secs. 981 and 982, and Title 28, |
| aka Robert Fleming, ) | U.S.C., Sec. 2461(c) - Criminal |
| JOHN ALLEN (4), ) | Forfeiture |
| ) | |
| Defendants. ) | |

The grand jury charges:

INTRODUCTORY ALLEGATIONS

1.  From approximately August 2006, until approximately December 2007, defendant MARY ARMSTRONG, aka Mary Fountain, aka Mary Daniels, aka Mary Polanco, aka Mary Medina, was a mortgage loan broker operating under various broker licenses held by others. A mortgage broker works on behalf of borrowers to obtain mortgage financing from independent lenders. Defendant ARMSTRONG operated under the business names New York Security Investment, Global Capital Banking, and Global Capital Financing, among others. Defendant WILLIAM FOUNTAIN,

EWA:vp:San Diego
9/19/12

aka William Fleming, aka Robert Fleming, worked with defendant ARMSTRONG as part of these ventures.

2. Defendant JOHN ALLEN was a mortgage loan processor who operated Cornerstone Mortgage Solutions in Laguna Hills, California. In approximately April 2007, ALLEN began participating in real estate transactions with ARMSTRONG and FOUNTAIN.

3. Teresa Rose (charged elsewhere) was a real estate agent licensed to practice in the state of California. Rose maintained an office at Coldwell Banker Country Realty in Ramona, within the Southern District of California.

4. Justin Mensen (charged elsewhere) lived in Washington state and periodically traveled to the Southern District of California in order to participate in real estate transactions with ARMSTRONG and Rose.

5. A Uniform Residential Loan Application, also known as "Fannie Mae Form 1003" or "Freddie Mac Form 65" (hereinafter, "loan application") was typically submitted by a prospective home buyer in order to obtain financing from a mortgage lender. The mortgage lender relied on the accuracy of the information provided in a loan application in determining whether to approve a mortgage loan and disburse funds for the purchase of real estate.

Count 1

18 U.S.C. 371

CONSPIRACY TO COMMIT WIRE FRAUD AND MONEY LAUNDERING

6. The allegations contained at paragraphs 1 through 5 are realleged and incorporated by reference.

7. Beginning on a date unknown to the grand jury, but no later than August 2006, and continuing through a date unknown to the grand

jury, but no earlier than December 2007, within the Southern District of California and elsewhere, defendants MARY ARMSTRONG, aka Mary Fountain, aka Mary Daniels, aka Mary Polanco, aka Mary Medina, WILLIAM FOUNTAIN, aka William Fleming, aka Robert Fleming, and JOHN ALLEN did knowingly and intentionally conspire and agree with each other and with Teresa Rose (charged elsewhere), Justin Mensen (charged elsewhere) and others to commit offenses against the United States, that is, Wire Fraud; in violation of Title 18, United States Code, Section 1343, and Money Laundering; in violation of Title 18, United States Code, Sections 1956 and 1957.

### Purpose of the Conspiracy

8. Defendants ARMSTRONG, FOUNTAIN, and ALLEN agreed with each other and with Teresa Rose, Justin Mensen, and others to defraud mortgage lenders out of funds by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts, and then to launder the proceeds by concealing and disguising the nature, location, source, ownership, and control of the funds and by engaging in transactions over $10,000.

### Methods and Means of the Conspiracy

9. To further the criminal conspiracy, defendants ARMSTRONG, FOUNTAIN, ALLEN, and others utilized the following methods and means, among others:

(a) Rose would identify properties for sale in Ramona, California, that could be used to fraudulently obtain a mortgage loan in excess of the true asking price.

(b) Rose would negotiate with the sellers of these properties, and convince the sellers to inflate the reported sales price by approximately $100,000, with the understanding that the

sellers would pay the difference between the increased purchase price and the sellers' true asking price to "construction" or "development" companies, which were in fact sham companies controlled by the conspirators.

(c) ARMSTRONG, ALLEN, and others would identify additional properties in El Cajon, California, the State of Washington, and elsewhere, that could be used to fraudulently obtain mortgage loans in excess of the true asking price.

(d) ARMSTRONG would identify individuals with good credit to serve as nominee purchasers ("straw buyers") for the selected properties, and arrange to obtain mortgage loans on their behalf. In discussions with the straw buyers, ARMSTRONG would describe the scheme as an "investment," and would promise the straw buyers payments of approximately $10,000 per transaction.

(e) ARMSTRONG would knowingly prepare loan applications for the straw buyers containing materially false and misleading information about the buyers' employment, income, assets, liabilities, and intent to occupy the properties.

(f) Rose and Mensen would add straw buyers as signatories on their personal bank accounts to verify false assets owned by straw buyers, in order to convince lenders to fund mortgage loans for the straw buyers.

(g) FOUNTAIN and Mensen would create sham companies that would be used by the conspirators to verify false employment, income, and rental history by the straw buyers, in order to convince lenders to fund mortgage loans for the straw buyers.

(h) FOUNTAIN and ARMSTRONG would obtain from A.Y., an accountant corporation representative, false Forms W-2 and pay stubs

in the names of straw buyers and false letters verifying A.Y.'s review of straw buyers' tax returns, in order to convince lenders to fund mortgage loans for the straw buyers.

(i) ALLEN would create false Forms W-2, pay stubs and bank account statements in the names of straw buyers to be submitted to mortgage lenders, in order to convince lenders to fund mortgage loans for the straw buyers.

(j) Mensen would create sham "construction" or "development" companies that would be used by the conspirators to receive payments out of escrow at the close of each real estate transaction, thereby concealing and disguising from the escrow companies, mortgage lenders, and sellers the fact that the funds were being diverted to the conspirators.

(k) ARMSTRONG, FOUNTAIN, ALLEN, Rose, Mensen, and others would cause the funding of mortgage loans through interstate wire transmissions of funds into and out of the Southern District of California and elsewhere.

(l) ARMSTRONG would direct Mensen to disburse the proceeds of the conspiracy out of accounts Mensen controlled to, among other designees, ARMSTRONG and FOUNTAIN, in amounts greater than $10,000.

(m) ARMSTRONG, FOUNTAIN, and Mensen would conceal and disguise the nature, location, source, ownership, and control of these proceeds through various financial transactions, including the disbursement of illicit proceeds in cash, cashier's checks, and official checks.

(n) Rose would arrange to rent the purchased properties to local tenants, and direct them to make their payments to Mensen. Mensen would use portions of the rental income and escrow payments to

make occasional mortgage payments to the lenders, so that the "investment" would appear legitimate to potential straw buyer recruits.

    (o) ARMSTRONG and FOUNTAIN would use the email account "globalcapbanking@yahoo.com" to communicate with each other and with others in furtherance of the conspiracy, by, for example, communicating with real estate professionals and sending incorporation documents, Forms W-2 and pay stubs.

    (p) Through the execution of their fraudulent conspiracy, the defendants would cause, on or about the dates listed below (Column "A"), the following properties (Column "B") to be purchased in the names of straw buyers (Column "D"), for the following approximate sale amounts (Column "C"), and would cause the following transfers of funds to occur from escrow to bank accounts they controlled (Column "E"):

| A | B | C | D | E |
|---|---|---|---|---|
| Date | Address | Purchase Price | Straw buyer | Wire from Escrow |
| 9/7/06 | 427 W. Haverford Rd Ramona CA | $640,000 | Mensen | $69,547 |
| 9/13/06 | 22715 Tombill Rd Ramona CA | $750,000 | Mensen | $89,920 |
| 9/25/06 | 1231 Bonita Way El Cajon CA | $720,000 | Mensen | $83,705 |
| 10/10/06 | 163 Steffy Ln Ramona CA | $750,000 | L.B. | $77,065 |
| 12/1/06 | 709 10th St Ramona CA | $699,000 | G.S. | $92,204 |
| 12/12/06 | 16927 Handlebar Rd Ramona CA | $949,000 | G.S. | $88,976 |
| 1/24/07 | 637 10th St Ramona CA | $699,000 | K.T. | $92,551 |
| 1/31/07 | 15268 Moonglow Dr Ramona CA | $675,000 | K.T. | $90,903 |

| A | B | C | D | E |
|---|---|---|---|---|
| Date | Address | Purchase Price | Straw buyer | Wire from Escrow |
| 1/31/07 | 22954 Tombill Rd Ramona CA | $995,000 | K.T. | $87,249 |
| 3/21/07 | 16061 Cassie Pl NW Poulsbo, WA | $629,950 | R.H. | $89,171 |
| 3/30/07 | 17009 88th St Ct KPN, Vaughn WA | $825,000 | R.H. | $83,877 |
| 3/30/07 | 20925 Welch Rd Snohomish WA | $725,000 | R.H. | $91,741 |
| 5/15/07 | 631 Hanson Ln Ramona CA | $600,000 | N.W. | $84,752 |
| 6/13/07 | 1511 Madrona Pt Bremerton, WA | $649,000 | L.D. | $168,113 |
| 9/17/07 | 1517 Madrona Pt Bremerton, WA | $628,280 | M.A. | $130,688 |
| 9/24/07 | 414 Index Pl NE Renton, WA | $599,000 | J.S. | $92,512 |

<u>Overt Acts</u>

10. In furtherance of this unlawful agreement, and to carry out its objects, the following overt acts, among others, were committed within the Southern District of California and elsewhere:

(a) On or about September 4, 2006, ARMSTRONG caused to be submitted to lender Fieldstone Mortgage Company a loan application for Mensen's purchase of property at 427 West Haverford Road, which contained the following statements and omissions: (1) that Mensen intended to occupy the property as his primary residence; (2) that Mensen was the owner of Ratcliff Construction, earning a salary of $20,000 per month; and (3) the omission that Mensen had loan applications pending with other lenders for the purchase of at least two additional properties.

1    (b)  In or around August and September 2006, Rose arranged for "S&G Drywall" to verify Mensen's employment at Ratcliff Construction.

   (c)  On or about September 5, 2006, Rose caused to be submitted to lender Fieldstone Mortgage Company a Special Occupancy Rider, which stated that Mensen would use the property located at 427 West Haverford Road as his primary residence.

   (d)  On or about September 14, 2006, Rose faxed an addendum to the purchase contract for 163 Steffy Lane which stated "Seller to pay to Ratcliff Construction Co. $90,000.00 for services rendered at close of escrow" and which was dated August 17, 2006.

   (e)  On or about September 20, 2006, Mensen signed Articles of Amendment, to be filed with the Florida Department of State Division of Corporations, listing straw buyers L.B. and G.S. as president and vice president of the corporation New Ratcliffe Trading, Inc.

   (f)  On or about October 11, 2006, Mensen received a wire payment of $77,065.89 from escrow relating to straw buyer L.B.'s purchase of 163 Steffy Lane, deposited to Ratcliff Land & Development's US Bank account number x1443, which Mensen controlled.

   (g)  On or about October 11, 2006, Mensen purchased seven official checks for $10,000 each and one official check for $7,009 from Ratcliff Land & Development's US Bank account number x1443, sequentially numbered 503605800 through 503605807, all made payable to WILLIAM FOUNTAIN.

   (h)  On or about October 17, 2006, FOUNTAIN cashed US Bank official check number 503605800 from Mensen for $10,000.

     (i)   On or about October 18, 2006, FOUNTAIN cashed US Bank official check number 503605801 from Mensen for $10,000.

     (j)   On or about October 23, 2006, FOUNTAIN cashed US Bank official check number 503605806 from Mensen for $10,000.

     (k)   On or about November 21, 2006, Rose faxed an addendum to the purchase contract for 709 10th Street, dated September 15, 2006, which stated "Seller to pay to D and S Land and Development Co. $100,000 for services rendered," signed by the seller.

     (l)   On or about November 30, 2006, Rose signed a Consumer Signature Card at the Ramona office of Ramona National Bank authorizing straw buyer G.S. as an account holder on her personal savings account (x8211).

     (m)   On or about November 30, 2006, Rose faxed a Verification of Deposit relating to G.S.'s purchase of 16927 Handlebar Road, which stated that G.S. owned personal savings account number x8211, with a current balance of $60,496.54.

     (n)   On or about December 1, 2006, Mensen received a wire payment of $92,204.13 from escrow to his personal Bank of America account number x0098, relating to straw buyer G.S.'s purchase of property at 709 10th Street, Ramona.

     (o)   On or about December 8, 2006, Rose faxed a "D and S Land and Development Work Order," dated August 24, 2006, which stated the sellers of 16927 Handlebar Road were provided a work order for $100,000 in construction.

     (p)   On or about December 12, 2006, Rose faxed an addendum to the purchase contract for 16927 Handlebar Road, dated September 14, 2006, which stated "Sellers to pay to D and S Land and Development Construction Co. $100000. for services rendered," signed by straw

buyer G.S. and the seller.

(q) On or about January 12, 2007, Mensen signed a Profit Amended Report, to be filed with the State of Washington Secretary of State, listing Mensen as president, and FOUNTAIN and straw buyers K.T., G.S., and L.B. as officers and directors, of the corporation Ratcliff Construction, Inc.

(r) In or around January 2007, Mensen added straw buyer K.T. as an account holder on Mensen's personal Bank of America account number x0098.

(s) On or about May 9, 2007, Mensen emailed to globalcapbanking@yahoo.com draft "investor" recruiting materials, including a "short version of what Global capital Financing is all about." According to this description, Global Capital would "facilitate loans on investment homes by using your credit" and pay the investor "$10,000/home purchased. Depending on your credit score and history, multiple properties can be purchased at one time."

(t) On or about May 10, 2007, ARMSTRONG caused to be submitted to lender First Magnus a loan application for straw buyer N.W.'s purchase of 631 Hanson Lane, which contained the following statements: (1) that N.W. intended to occupy the property as his primary residence; and (2) that N.W. was a Development Manager at Ratcliff Construction, earning a salary of $12,500 per month.

(u) At an unknown date, but not later than May 2007, Rose prepared an addendum to the purchase contract for 631 Hanson Lane, dated December 22, 2006, which stated "Sellers agree to pay D and S Land and Development invoice out of escrow. Said invoice shall not exceed $100,000," signed by the sellers and straw buyer N.W.

(v) On or about May 17, 2007, Mensen received a wire

10

payment of $84,752.06 from escrow relating to straw buyer N.W.'s purchase of 631 Hanson Lane, deposited to Mensen's Wells Fargo account number x8185.

  (w) On or about May 18, 2007, Mensen withdrew $10,000 in cash from Wells Fargo account number x8185 at branch 00963 in Laguna Woods, California.

  (x) On or about May 18, 2007, Mensen withdrew $22,000 in cash from Wells Fargo account number x8185 at branch 00640 in Lake Forest, California.

  (y) On or about May 29, 2007, Mensen received an email from globalcapbanking@yahoo.com, which contained information for straw buyer L.D., including the claim that L.D.'s position at Ratcliff Construction was "Lead Man" and that L.D. earned a gross monthly salary of $6,000.

  (z) On or about May 30, 2007, A.Y. received an email from globalcapbanking@yahoo.com providing straw buyer L.D.'s address and social security number and requesting "2005-2006 need asap."

  (aa) On or about May 31, 2007, A.Y. emailed to globalcapbanking@yahoo.com 2005 and 2006 Forms W-2 for Ratcliff Construction, showing salaries paid to various individuals, including straw buyers N.W. and L.D.

  (bb) On or about May 31, 2007, ALLEN received an email from globalcapbanking@yahoo.com, which included a list of "search criteria" for additional properties to purchase, including a "price reduction" of "$100k + w/ comps to support the original sale price."

  (cc) On or about May 31, 2007, ALLEN faxed loan applications to two different lenders for straw buyer L.D.'s purchase of 1511 Madrona Point and 1517 Madrona Point.

   (dd) On or about May 31, 2007, ALLEN received an email from globalcapbanking@yahoo.com providing straw buyer L.D.'s April and May 2007 bank account statements, showing total deposit balances of $802.57 and $1,082.36, respectively.

   (ee) On or about May 31, 2007, ALLEN emailed to globalcapbanking@yahoo.com straw buyer L.D.'s April and May 2007 bank account statements, showing total deposit balances of $37,802.57 and $38,082.36, respectively.

   (ff) On or about June 12, 2007, ALLEN emailed to globalcapbanking@yahoo.com pay stubs and Forms W-2 for Ratcliff Construction, showing salary paid to straw buyer L.D., along with handwritten notes altering the payment amounts. In the cover email, ALLEN wrote, "Please make correction on each and every paystub and w2."

   (gg) On or about June 17, 2007, ALLEN emailed to globalcapbanking@yahoo.com purchase contracts for six properties in Mission Viejo, California, for straw buyer John S., which ALLEN described included "126K Profit."

   (hh) On or about June 27, 2007, ALLEN received an email from globalcapbanking@yahoo.com providing straw buyer L.D.'s June 2007 bank account statement, showing a total deposit balance of $14,150.40.

   (ii) On or about June 28, 2007, ALLEN emailed to globalcapbanking@yahoo.com straw buyer L.D.'s June 2007 bank account statement, showing a total deposit balance of $152,392.91.

   (jj) On or about August 5, 2007, ARMSTRONG purchased an advertisement in the Los Angeles Times, seeking "Employee/Staff with excellent credit scores," and promising individuals with "a credit score of 670 or better" earnings of at least $15,000 per month "by

partnering up and providing their credit." The advertisement promised "cash at closing" with "no up front or investment costs."

(kk) On or about August 17, 2007, FOUNTAIN signed Articles of Incorporation, listing straw buyers M.A. and J.S. as directors, and FOUNTAIN as the incorporator and registered agent, of the corporation Productions West, Inc.

(ll) On or about September 5, 2007, A.Y. emailed to globalcapbanking@yahoo.com a letter stating that straw buyer M.A. was the self-employed owner of Productions West, and that A.Y. had reviewed M.A.'s taxes for the past three years.

(mm) On or about September 5, 2007, A.Y. emailed to globalcapbanking@yahoo.com a letter stating that straw buyer J.S. was the self-employed owner of Productions West and Cottage Home Design, and that A.Y. had reviewed J.S.'s taxes for the past three years.

(nn) On or about September 21, 2007, Mensen received a wire payment of $130,688.32 from escrow relating to straw buyer M.A.'s purchase of 1517 Madrona Point, deposited to Mensen's Bank of America account number x2550.

(oo) On or about September 21, 2007, Mensen withdrew $10,000 in cash from Bank of America account number x2550 at branch 0002129 in Los Angeles, California.

(pp) On or about September 21, 2007, Mensen withdrew $10,000 in cash from Bank of America account number x2550 at branch 0000310 in Los Angeles, California.

(qq) On or about September 21, 2007, Mensen withdrew $29,000 in cash from Bank of America account number x2550 at branch 0000021 in Los Angeles, California.

//

   (rr) On or about October 15, 2007, ALLEN emailed to globalcapbanking@yahoo.com credit reports for two new straw buyers.

   (ss) On or about November 4, 2007, Mensen emailed a list of properties purchased as part of the scheme, along with rental income, to globalcapbanking@yahoo.com.

   (tt) On or about December 28, 2007, ALLEN emailed to globalcapbanking@yahoo.com an invoice from Cornerstone Mortgage Solutions to Maryann Armstrong of Global Capital, requesting payment of $1,875.

All in violation of Title 18, United States Code, Section 371.

Count 2

18 U.S.C. 1343

WIRE FRAUD

  11. The allegations contained at paragraphs 1 through 5 are realleged and incorporated by reference.

  12. Beginning on a date unknown to the grand jury, but no later than August 2006, and continuing through a date unknown to the grand jury, but no earlier than November 2007, within the Southern District of California and elsewhere, defendant MARY ARMSTRONG, aka Mary Fountain, aka Mary Daniels, and others, with the intent to defraud, devised and intended to devise a scheme to defraud as to material matters and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

  13. The allegations contained at paragraph 9 of this Indictment are realleged as more fully describing the scheme.

Wire Transmission in Furtherance of the Scheme

  14. On or about May 17, 2007, within the Southern District of

14

California and elsewhere, for the purpose of executing the above-described scheme to defraud and to obtain money and property by materially false and fraudulent pretenses, representations, and promises, and omissions of material facts, defendant ARMSTRONG and others caused to be transmitted, in interstate and foreign commerce, by means of wire and radio communication, certain writings, signs, signals, pictures, and sounds, to wit, the interstate wire transmission of approximately $84,752.06 in funds fraudulently obtained from a mortgage lender, into Mensen's Wells Fargo account number x8185.

All in violation of Title 18, United States Code, Section 1343.

## Counts 3 - 5

### 18 U.S.C. 1956(a)(1)(B)(i)

### MONEY LAUNDERING

15. The allegations contained at paragraphs 1 through 5 are realleged and incorporated by reference.

16. On or about May 18, 2007, within the Southern District of California and elsewhere, defendant MARY ARMSTRONG, aka Mary Fountain, aka Mary Daniels, did knowingly conduct and attempt to conduct and cause to be conducted the following financial transactions affecting interstate commerce, knowing that each transaction involved the proceeds of some form of unlawful activity, and which in fact involved the proceeds of specified unlawful activity, that is, Wire Fraud; in violation of Title 18, United States Code, Section 1343, and knowing that each transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activities:

//

| COUNT | FINANCIAL TRANSACTION |
|---|---|
| 3 | Cash withdrawal of $10,000 from Mensen's Wells Fargo account number x8185 at Wells Fargo branch 00963 in Laguna Woods, California. |
| 4 | Cash withdrawal of $22,000 from Mensen's Wells Fargo account number x8185 at Wells Fargo branch 00640 in Lake Forest, California. |
| 5 | Cash delivery of approximately $32,000 from Mensen to ARMSTRONG, in Newport Beach, California. |

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## FORFEITURE ALLEGATIONS

17. The allegations contained in Counts 1 through 5 of this Indictment are re-alleged and incorporated by reference for the purpose of alleging forfeiture to the United States pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982, and Title 28, United States Code, Section 2461(c).

18. Upon conviction of the felony offenses alleged in Counts 1 through 5, defendants MARY ARMSTRONG, aka Mary Fountain, aka Mary Daniels, WILLIAM FOUNTAIN, aka William Fleming, aka Robert Fleming, and JOHN ALLEN shall forfeit to the United States pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982, and Title 28, United States Code, Section 2461(c):

    (a) any property, real or personal, which constitutes or is derived from the proceeds traceable to the violations set forth in Counts 1 and 2; and

    (b) any property, real or personal, involved in the offenses set forth in Counts 3-5, or traceable to such property.

19. If any of the above-described property, as a result of any acts or omissions of the defendants:

16

   (a) cannot be located upon the exercise of due diligence;

   (b) has been transferred or sold to, or deposited with, a third person;

   (c) has been placed beyond the jurisdiction of the Court;

   (d) has been substantially diminished in value; or

   (e) has been commingled with other property which cannot been subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), made applicable herein by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the said property described above as being the subject of forfeiture.

  DATED: September 20, 2012.

            A TRUE BILL:

            *Patricia Edwards*
            Foreperson

LAURA E. DUFFY
United States Attorney

By: *Emily W. Allen*
   EMILY W. ALLEN
   Special Assistant U.S. Attorney

By: *Valerie H. Chu*
   VALERIE H. CHU
   Assistant U.S. Attorney